UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JEFFREY SCOTT BROWN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:04-CV-256RM |
| | ) | |
| JOHN BARNES, CECIL DAVIS, | ) | |
| and DAWN BUSS, | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

Jeffrey Scott Brown alleges that defendants Dawn Buss, John Barnes, and Cecil Davis violated his rights secured by the Eighth Amendment by failing to protect him from attacks by fellow inmates in 2003 while he was incarcerated at the Indiana State Prison. Mr. Brown brings this action pursuant to 42 U.S.C. § 1983; the court has jurisdiction pursuant to 28 U.S.C. § 1343. All defendants have moved for summary judgment and Mr. Brown has responded. For the reasons that follow, the court grants the defendants' motion.

I

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant

is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

The court sets forth the facts as favorably to Mr. Brown as the record allows.

Prison officials moved Mr. Brown into the D-Cell House West in December 2002 because of possession of intoxicants and his prior conduct history. Mr. Brown's conduct history made him ineligible for a job, so he had to be placed in an idle housing unit. D-West is a general population setting that houses offenders who are classified to idle status. At the time of his transfer to D-West, Mr. Brown told people in the D Cell House Unit Team Office — Mr. Barnes, Bernard Johnson,

Sherry Hatchel, and Harry Berry — that he couldn't be placed on D-West because he had enemies there. Mr. Barnes gave Brown a request for monitoring status form, submission of which would trigger an investigation into whether an offender needs to be separated from other offenders.

Mr. Brown started to fill out the request. He indicated he was in danger from offenders Meek # 974621; Jim Cook # 881631; and Spurlock # 6845. As Mr. Brown worked on the form, Mr. Barnes explained that Mr. Brown would be placed on "keylock status" during the investigation. Mr. Brown said he didn't want the monitoring status if he had to be placed on keylock status. Mr. Brown abandoned his work on the form and went to his cell. Mr. Brown made no request for monitoring status or complaint of danger in D Cell House before his first fight there.

On January 10, 2003, Mr. Brown was involved in an altercation with inmate Jimmie Jones. Mr. Brown was struck in the eye with a padlock and taken to an outside hospital for medical care. Officer Sanchez filed a report indicating that he placed Mr. Brown elsewhere so "as to protect him from other offenders, who were yelling, 'Don't come back here mother fucker.'"

As a result of the altercation with Jones, Mr. Brown was charged and found guilty of the institutional offense of battery without a weapon, was sentenced to 6 months in disciplinary segregation, and lost 180 days earned credit time. Mr. Brown didn't request protective custody or monitoring status after the Jones incident; prison authorities placed him on "separatee status" from Mr. Jones.

3

When Mr. Brown was released from disciplinary segregation in February 2003, he was placed in administrative segregation (a classification for offenders who pose a threat to life, property, self, staff, other offenders, or facility security) on D Cell House East, which houses inmates classified as administrative segregation.

On February 3, 2003, before his release from disciplinary segregation, Mr. Brown sent a letter to Ms. Buss and Mr. Davis saying that (a) his placement on D Cell House would be unsafe and (b) questioning the disciplinary sanction he received as a result of the Jones altercation. Ms. Buss responded that she wouldn't interfere with the disciplinary process unless Mr. Brown filed an appeal of the Conduct Adjustment Board's decision.

On February 12, 2003, still before his release from disciplinary segregation, Mr. Brown sent a letter to Ms. Buss and Mr. Davis saying he needed separatee status from offenders Jones and Spurlock # 6845, before transfer to administrative segregation. Ms. Buss recommended that Mr. Brown be transferred out of the Prison to another facility; the Department of Correction denied that recommendation.

Mr. Brown wrote Ms. Buss to ask about the reasoning behind his administrative segregation placement on D-East. Mr. Brown complained of the lost opportunity to pursue his college education, questioned the justice of the finding that he battered Jones, and stated (without identifying any particular inmate who posed the threat) "If I'm left in D-East I will continue to be attacked maybe lamed

4

for life or possibly killed." Ms. Buss responded that she believed Mr. Brown's assignment to administrative segregation was appropriate, and that he could seek a recommendation for release from administrative segregation from his unit team manager once he demonstrated appropriate behavior modification. Before receiving that response, Mr. Brown filed a classification appeal of his placement on administrative segregation. Ms. Buss denied the appeal. Between this correspondence and the next assault, Mr. Brown didn't formally complain about being in danger on D-East, or submit a request for monitoring status form, or request protective custody from internal affairs.

    Mr. Brown originally was housed near the security cameras. In August, he was moved to a cell down the hall, and out of easy range of the security cameras. Mr. Brown says he strongly protested the move, but doesn't say what his protests consisted of. Two days later, fellow inmate Deric Foulks # 893097 attacked Mr. Brown, and Mr. Brown was placed in protective custody.

    The Department of Correction had a grievance procedure in place in 2002 and 2003. Affected inmates could grieve facility and department policies, rules, and procedures; the lack of a policy, rule, or procedure directly affecting the person's living conditions; and actions of employees. Grievances were required to include specific, detailed descriptions of the incidents being grieved and suggested remedies to the problem. A grieving inmate started the process by submitting a complaint to a counselor. If not satisfied by the response to the complaint, the inmate could file a grievance, which would be assigned to a grievance specialist

5

for investigation and response. An inmate not satisfied with the specialist's response could pursue the matter through four further steps.

Mr. Brown filed a grievance on March 6, 2003, complaining that Mr. Barnes had placed him in administrative segregation for personal reasons; the grievance was rejected because classification actions or decisions were not grievable. The defendants say Mr. Brown could have grieved the failure to protect him from altercations, but he didn't do so. Had he filed such a grievance, an investigation would have been conducted and the matter would have been referred to higher officials if substantial, credible evidence of wrongdoing were found, and those higher officials could have transferred Mr. Brown to a different housing unit or facility, or transferred or fired any staff member who failed to protect Mr. Brown.

## II.

Mr. Brown contends that by failing to protect him from the August attack by inmate Foulks, the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.

### A.

The Prison Litigation Reform Act requires a prisoner to exhaust "such administrative remedies as are available" before bringing a prison conditions suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit," Porter v. Nussle, 122 S. Ct. 983, 988 (2002), as long as

6

the administrative remedy is "available," meaning that the procedure is authorized to take some action, such as disciplining employees or moving a prisoner to another cell, cellblock, or facility. *See* Larkin v. Galloway, 266 F.3d 718, 723 (7th Cir. 2001). Exhaustion entails following the rules governing the administrative remedies. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). The exhaustion provision requires exhaustion of all available administrative appeals. Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); *see also* Riccardo v. Rausch, 375 F.3d 521, 523-524 (7th Cir. 2004) ("Prisoners must follow state rules about the time and content of grievances. Failure to do this means failure to use (and thus to exhaust) available remedies."), *cert. denied,* 125 S. Ct. 1589 (2005).

An administrative remedy was "available" to Mr. Brown. Had Mr. Brown filed a complaint (and, if the complaint failed, a grievance) that correctional officials were disregarding an unusual risk of harm posed to him by other inmates, he could have been moved. Mr. Brown filed no such complaint or grievance, though he complained about his battery conviction and Mr. Barnes's motivation for placing him in administrative segregation. He did not grieve any perceived disregard of a risk to his safety.

Mr. Brown argues that "Offenders are not attorneys nor do they have ready access to legal counsel. Brown took all of the appropriate steps that he believed, and was advised, were appropriate." This argument would be stronger if the PLRA made failure to exhaust an affirmative or equitable defense for the defendants to prove, but instead, the PLRA makes exhaustion of available administrative

7

remedies a condition to suit. Mr. Brown did not exhaust his administrative remedies, and the defendants did not prevent him from doing so. The defendants are entitled to summary judgment on this ground, but the judgment to which this argument entitles them is merely a dismissal without prejudice, *see* Ford v. Johnson, 362 F.3d 395 (7th Cir. 2004), rather than a final judgment. The defendants' next argument, if successful, entitles the defendants to a final judgment. Accordingly, the court's analysis must continue.

B.

To prevail on his Eighth Amendment claim, Mr. Brown must show that one or more of the defendants was deliberately indifferent to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); *see also* Armstrong v. Squadrito, 152 F.3d 564, 577 (7th Cir. 1998) ("the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so"). Knowledge of a risk can be shown if an official was

8

exposed to information from which the inference could be drawn that a substantial risk exists, and he or she also draws the inference." Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004); *see also* Boyce v. Moore, 314 F.3d 884, 888 (7th Cir. 2002). The official need not know the specifics of the danger, as long as the official was aware of a serious risk of harm in some form. Velez v. Johnson, 395 F.3d 732, 736 (7th Cir. 2005); *See also* Brown v. Budz, 398 F.3d 904, 913-915 (7th Cir. 2005) (knowledge that inmate was risk to certain types of fellow inmates sufficient).

No reasonable trier of fact could find, on the basis of the summary judgment record, that any of these defendants was aware of facts from which an official could, and did, draw an inference that a substantial risk of serious harm to Mr. Brown existed. None of the defendants had any reason to believe Foulks posed any risk to Mr. Brown in August 2003. In February letters, Mr. Brown had forewarned of risk to his life or limb on D-East, but he specified nothing to suggest the risk to him exceeded the risk to any other inmate, and the warnings came in the context of claims of disciplinary injustice and desire for college courses. If Mr. Barnes saw the request for monitoring status form that Mr. Brown started to fill out, he might have been on notice that the inmates listed there — Meek, Cook, and Spurlock — might have posed some sort of threat to Mr. Brown. But Mr. Brown himself didn't think the threat was great enough to suffer keylock status; the names were written on the form eight months before the attack by Foulks, and the August aggressor was not one of the people named.

9

Because none of the defendants could have inferred the existence of a serious harm to Mr. Brown, none can be liable for deliberate indifference to that risk. The defendants are entitled to judgment on Mr. Brown's Eighth Amendment claim, not simply to a dismissal without prejudice.

III

For the foregoing reasons, the court GRANTS the defendants' motion for summary judgment (docket #54). The clerk shall enter judgment for the defendants.

ENTERED: August 4, 2005

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

cc:   M. Bullington
      T. Weaver